**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RONYELL JONES,

     *Plaintiff,*

 v.

CAROLYN W. COLVIN.,

     *Defendant.*

CIVIL ACTION
NO. 15-1126

**PAPPERT, J.**               **September 30, 2016**

<u>**MEMORANDUM**</u>

  Plaintiff Ronyell Jones ("Jones") brought this suit seeking review of the final

determination of the Commissioner of Social Security ("Commissioner") denying his application

for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  *See* 42

U.S.C. § 1381, *et seq*.  Upon consideration of the administrative record, Magistrate Judge Lynne

A. Sitarski's Report and Recommendation ("R & R") and Jones's objections thereto, the Court

adopts the R & R, denies Jones's request for review and affirms the Commissioner's decision.

**I.**

  On August 31, 2011 Jones filed an application for SSI, alleging that he has been disabled

since August 19, 2011 as a result of gunshot wounds.  (R. at 160.)  Jones's application was

denied on December 16, 2011 and he thereafter requested a de novo hearing before an

Administrative Law Judge ("ALJ").  (R. at 94–98; 99–101.)  The ALJ held hearings on Jones's

applications on November 29, 2012 and April 9, 2013 and denied relief on August 9, 2013.  (R.

72–84; 24–71; 10–20.)  The ALJ's decision became final after the Appeals Council denied

Jones's request for review on December 30, 2014.  (R. at 1–3.)  Jones filed this suit on March 9,

2015.  On September 14, 2015 the case was referred to Magistrate Judge Sitarski for a R & R.

On August 18, 2016 Magistrate Judge Sitarski recommended that Jones's request for review of the Commissioner's decision be denied.

Jones asserts three objections to the R & R.  First, Jones argues that the ALJ rejected medical opinion evidence without good reason or adequate explanation.  Second, he claims the ALJ rejected plaintiff's testimony without good reason or adequate explanation.  Third, Jones contends that the ALJ improperly assessed plaintiff's residual functional capacity and found Jones not disabled based on an improper hypothetical question.  The Court agrees with Magistrate Judge Sitarski's assessment rejecting all of Jones's objections.

## II.

The Court reviews de novo those portions of the R & R to which Jones has objected.  *See* 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998).  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ.  *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).  Rather, the Court reviews the ALJ's findings to determine whether they were supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion."  *Rutherford*, 399 F.3d at 552 (internal quotations omitted).  "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"  *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).  If the decision of the ALJ is supported by substantial evidence, the Court may not set it aside "even if [the Court] would

have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999)).  The ALJ's decision "must therefore present a sufficient explanation of the final

determination in order to provide the reviewing court with the benefit of the factual basis

underlying the ultimate disability finding." *D'angelo v. Colvin*, No. 14-6594, 2016 WL 930690,

at *1 (E.D. Pa. Mar. 11, 2016) (citing *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981)).

The decision need only discuss the most relevant evidence concerning a claimant's disability,

"but it must provide sufficient discussion to allow the reviewing Court to determine whether its

rejection of potentially significant evidence was proper." *Id.* (citing *Johnson v. Comm'r of Soc.

Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008)).

### III.

Jones first objects that the ALJ "rejected medical opinion evidence without good reason

or adequate explanation."  (Pl.'s Obj. to R & R, ECF No. 16, at 1.)  Specifically, Jones objects to

the partial rejection of the medical opinions of two different physicians, Dr. Leonard Rosenfeld

("Dr. Rosenfeld"), the treating physician, and Dr. Larry Wolk ("Dr. Wolk"), the examining

physician.

"A cardinal principle guiding disability determinations is that the ALJ accord treating

physicians' reports great weight, especially 'when their opinions reflect expert judgment based

on continuing observation of the patient's condition over a prolonged period of time.'" *Morales

v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.

1999)).  "Where a treating physician's opinion on the nature and severity of an impairment is

well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in the record, it will be given controlling weight."

*Hall v. Comm'r of Soc. Sec.*, 218 F. App'x 212, 214–15 (3d Cir. 2007); *see also Fargnoli v.*

*Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).  "When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization."  *Id.  See also Plummer*, 186 F.3d at 429 ("ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); 20 C.F.R. § 416.927(c).

"However, 'where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit' and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence." *Becker v. Comm'r of Soc. Sec.*, 403 F. App'x 679, 686 (3d Cir. 2010) (quoting *Morales*, 225 F.3d at 317); *see also* 20 C.F.R. § 416.927(c)(2).  But the ALJ "must consider all the evidence and give some reason for discounting the evidence [s]he rejects."  *Plummer*, 186 F.3d at 429. Furthermore an "ALJ may not make speculative inferences from medical reports," *id.*; *see, e.g.*, *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), and "is not free to employ her own expertise against that of a physician who presents competent medical evidence," *id.* (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)).  Instead, the ALJ considers a number of factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the opinion; (4) the consistency with the remainder of the record; and (5) whether the medical issues in question are related to the physician's area of specialty.  *See* 20 C.F.R. § 404.1527(c)(2)–(5).

**A.**

Jones first objects to the ALJ's treatment of Dr. Rosenfeld's opinion.  Jones claims Dr.
Rosenfeld found him "presently totally disabled."  (Pl.'s Br. and Statement of Issues in Supp. of
Req. for Review, hereinafter "Pl.'s Br.," ECF No. 11, at 2.)  Jones concedes that the issue of
whether a patient is disabled is one reserved to the Commissioner, *see* 20 C.F.R. § 416.927(d)(1),
but he argues that this is not a reason to reject an opinion outright.  (Pl.'s Br., at 3.)  Instead,
citing Social Security Ruling 96-5p, 1996 WL 374183 (July 2, 1996), Jones contends the
rejection must be explained and argues that the ALJ failed to do so here.  (Pl.'s Br., at 3.)

Jones is correct.  An ALJ must explain the rejection of an opinion even if that opinion is
on an issue reserved to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183 (July 2, 1996).  But
Jones mischaracterizes the ALJ's handling of this issue.  The ALJ first acknowledged the "special
significance" of a treating physician's opinion "when . . . consistent with other substantial
evidence of record."  (R. 18.)  In the following sentence, the ALJ highlighted that Dr. Rosenfeld
acknowledged elsewhere in his assessment of Jones's disability that he needed to further evaluate
Jones to determine his actual limitations.  (*Id.*)  Jones argues that this statement "may be intended
to suggest that Dr. Rosenfeld's form was inconsistent," and if so, it should be rejected.  (Pl.'s Br.,
at 3.)  As an initial matter, there is no doubt the ALJ was suggesting that Dr. Rosenfeld's opinion
was inconsistent.  This is not surprising, since consistency with the remainder of the record is a
factor an ALJ should consider in evaluating a treating physician's opinion.  *See* 20 C.F.R. §
404.1527(c)(2)–(5).

This conclusion by the ALJ should not be rejected because substantial evidence in the
record supports it.  Despite seeing Jones seven times, (R. 326–33), Dr. Rosenfeld was never able
to fully examine Jones because of his fear of pain, (R. 16–18, 327), and Dr. Rosenfeld elsewhere

explained that Jones needed a full evaluation and physical therapy to help assess whether he could regain functional ability.  (R. 327, 329–32.)  Dr. Rosenfeld also noted that Jones "has the ability to improve significantly" with a full evaluation and appropriate treatment plan, (*Id.*) and that it was "too soon to conclude that he will be permanently disabled."  (*Id.* at 333.)  Moreover, Dr. Rosenfeld's opinion was contradicted by other parts of the record.  Both Dr. Wolk and Dr. Louis Bonita ("Dr. Bonita"), a non-examining consultant, concluded otherwise, *see* (R. 317–18, 89), and the ALJ expressly highlighted this disagreement in her opinion.  (R. 17–18.)  Thus, the ALJ was well within her right to conclude that Dr. Rosenfeld's opinion was internally inconsistent and not supported by substantial evidence.  *See, e.g.*, *Ruiz v. Comm'r of Soc. Sec.*, No. 10-4024, 2011 WL 2745927, at *8 (D.N.J. July 12, 2008) (approving ALJ's decision which rejected a treating physician's disability opinion on an issue reserved to the Commissioner and concluded it was properly afforded no weight because it was unsupported by physician's treatment record and conflicted with other medical opinions).

Only then did the ALJ note that Dr. Rosenfeld's conclusions regarding disability were on an issue reserved to the Commissioner.  (R. 18.); *see Adorno v. Shalala*, 40 F.3d 43, 47–48 (3d Cir. 1994) ("We recognize, of course, that a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue."); 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.").  Jones portrays the ALJ's decision as relying solely on this "ultimate issue" problem.  In reality, the ALJ concluded that Dr. Rosenfeld's opinion was owed less weight based on the internal inconsistency of Dr. Rosenfeld's opinion and its disagreement with other medical opinions—in addition to the little weight afforded to conclusions on the ultimate issue.

6

Finally, Jones asserts that the ALJ substituted her medical judgment and rejected expert medical opinion.  (Pl.'s Objs. to R & R, at 1.)  This argument is meritless for the reasons already provided.  *See Hoyman v. Colvin*, 606 F. App'x 678, 679–80 (3d Cir. 2015) ("Like here, the claimant in *Plummer*[, 186 F.3d at 429] contended that the ALJ's decision was not supported by substantial evidence 'because the ALJ improperly substituted her own judgment in place of the medical evidence.'  There, we found substantial evidence to support the ALJ's discounting of the treating physician's opinion because the physician's answers about the extent and severity of the claimant's disability were contradicted both by his own fuller medical report and by the reports of other doctors who found that the claimant suffered 'no significant functional limitations' and was improving." (internal citations omitted)).

**B.**

Jones also objects to the ALJ's rejection of Dr. Wolk's conclusion that plaintiff could perform occasional bending but could never perform all other postural limitations.  (Pl.'s Br., at 5.)  Jones again argues that the ALJ substituted her lay medical judgment for that of a qualified physician.  (*Id.* at 6.)  This error, Jones asserts, is not harmless because the limitation on his ability to stoop would eliminate most unskilled, sedentary jobs.  (*Id.*)  Jones's arguments are unconvincing.  The ALJ's bases for partially rejecting Dr. Wolk's opinion was explained in her decision and supported by substantial evidence.  Moreover, even if the ALJ had accepted Dr. Wolk's postural limitations, she would not have found Jones disabled because the jobs identified by the vocational expert involved no postural limitations.  Thus, any alleged error is harmless.

**i.**

In her decision, the ALJ first acknowledged that she gave Dr. Wolk's opinions greater weight, as his opinions were supported "by medically acceptable clinical, laboratory or

diagnostic techniques, and [were] not inconsistent with other evidence in the case record." (R. 18.) The ALJ rejected Dr. Wolk's postural limitations as unsupported "by the results of his examination and inconsistent with the claimant's reported activities." (*Id.*)

This conclusion is supported by substantial evidence. Dr. Wolk's examination revealed that Jones's gait was normal, he had full grip strength in his dominant right hand, and he could walk without a cane or assistive device. (R. 317–22.) Dr. Wolk concluded that Jones was able to lift and carry two to three pounds frequently and ten pounds occasionally and he could stand and/or walk for three hours and sit for six hours with an alternating sit/stand option. (R. 317.) Jones's reported activities included assisting with childcare and shopping for food and clothing. (R. 198–201.) Moreover, Dr. Bonita disagreed with Dr. Wolk's postural limitations. (R. 87–90.) Thus, the ALJ's rejection of Dr. Wolk's postural limitations is supported by substantial evidence.

**ii.**

If there was error, it was harmless. Jones relies extensively on Dr. Wolk's assertion that Jones has a stooping limitation and SSR 96-9p's statement that "[a] *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply," to argue that this is not harmless. SSR 96-9p, 1996 WL 374185 (July 2, 1996). But SSR 96-9p continues: "Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." The ALJ did exactly this—a vocational expert testified at Jones's hearing. The vocational expert proposed three sample jobs—telephone information clerk, order clerk, and addresser—all of which have no stooping requirement in the Dictionary of Occupational Titles ("DOT"). Jones acknowledges this, but contends that because the hypothetical question posed to

the vocational expert included the option of "occasional stooping" and because the DOT cannot trump agency policy, the error is not harmless.  Jones cites no authority for this assertion.

First, the DOT *is* agency policy—it appears among a list of publications from which an ALJ can take administrative notice of reliable job information.  20 C.F.R. § 404.1566(d)(1).  Moreover, the DOT does not conflict with SSR 96-9p.  SSR 96-9p suggests an inability to stoop would eliminate *most* unskilled work—it does not command a finding of disabled.  Moreover, SSR 96-9p does not stop here.  It suggests consultation with a vocational expert when an individual is limited to less than occasional stooping.  Thus, there is no explicit conflict between SSR 96-9p and the DOT.

Jones also claims that even if DOT does not include a stooping requirement, the practical realities of the workplace suggest otherwise—since an "individual needs to be able to stoop down and pick something up" off the floor if "things get dropped or knocked over."  (Pl.'s Br., at 9.)  The Court disagrees.  Adopting Jones's reasoning would add a stooping requirement to *every* job; in reality, the DOT lists many jobs without such a requirement.  His only authority for this assertion is the single sentence quoted above from SSR 96-9p.

## IV.

Jones next argues that the ALJ "rejected plaintiff's testimony without good reason or adequate explanation."  (Pl's Obj. to R & R, at 6).  District courts must defer to the ALJ's assessment of credibility.  *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir. 2014) (citing *Diaz v. Comm'r*, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses . . . ."); *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2005) ("The credibility determinations of an administrative judge are virtually

unreviewable on appeal.").  Allegations of pain must be supported by objective medical evidence.  *See* 20 C.F.R. § 404.1529(c); *Hall v. Comm'r*, 218 F. App'x 212, 215 (3d Cir. 2007). And an ALJ "may reject a claimant's subjective testimony if she does not find it credible so long as she explains why she is rejecting the testimony.  *Id.* (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 433 (3d Cir. 1999).[1]

"An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely because they are not substantiated by objective medical evidence*."  SSR 96-7p, 1996 WL 374186 (July 2, 1996) (emphasis added).  Social Security Ruling 96-7p[2] articulates several factors ALJs should consider in making a credibility determination.  *See id.*  These factors include the claimant's "daily activities" and the "consistency of the individual's own statements." *Id.*; *see also Scatorchia v. Comm'r*, 137 F. App'x 468, 471 (3d Cir. 2005).  Numerous courts have grappled with evaluating an ALJ's credibility determination in light of 96-7p.  If an ALJ considers any other factor aside from the objective medical evidence in deciding that a claimant's testimony is not credible, courts uniformly defer to the judgment of the ALJ.[3]

---

[1]        *See also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) ("Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence . . . , the ALJ must still explain why he is rejecting the testimony.") (citations omitted); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."); SSR 96-7p, 1996 WL 374186 (July 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

[2]        SSR 96-7p was superseded by SSR 16-3p on March 28, 2016, years after the ALJ's final decision here.  *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

[3]        *See, e.g.*, *Avilla v. Colvin*, No. 15-2857, 2016 WL 2930512, at *8 (D.N.J. May 18, 2016)  (finding ALJ did not rely solely on lack of objective medical evidence because ALJ considered Plaintiff's testimony "in the context of all the medical evidence . . . and also considered Plaintiff's claims in light of daily activities such as church attendance [and] visiting relatives"); *Santiago v. Colvin*, No. 15-0612, 2016 WL 2593697, at *10 (D.N.J. May 5, 2016) (finding ALJ did not rely solely on lack of objective medical evidence because ALJ considered fact that claimant was able to "take care of his children, drive a car, and attend religious services regularly"); *Weidman v. Colvin*, 164 F. Supp. 3d 650, 665 (M.D. Pa. 2015) (finding that the "ALJ did not rely solely on the lack of objective

Jones asserts that the ALJ violated 96-7p by concluding that he was not fully credible based *only* on a lack of supporting objective medical evidence.  *See* (Pl.'s Br., at 11). Jones block quotes three paragraphs of the ALJ's decision to support this assertion.  *See* (*Id.*).  This is too narrow reading of the ALJ's opinion which considered "all the evidence and testimony of record, including exhibits of record not specifically cited in [her] opinion."  (R. 14; 15 (discussing "consideration of the entire record".)  The ALJ considered "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence *and other evidence based on the requirements of* 20 C.F.R. 416.929, and SSR 96-7p."  (R. 16.)

Of course, it is "not sufficient" for the ALJ "to make a conclusory statement that 'the individual's allegations have been considered" or that the "allegations are (or are not) credible." SR 96-7p.  Nor is it enough for the ALJ to simply "recite the factors that are described in the regulations for evaluating symptoms."  *Id.*  While the ALJ did recite the factors described in SSR 96-7p, she also provided specific reasons for her findings on credibility.  Immediately prior to concluding that Jones's testimony cannot be considered "fully credible," the ALJ listed Jones's daily activities:  "The claimant further testified that he sits in the house talking to his kids during day.  He helps his wife with the children.  He can microwave meals and drive.  He takes his wife shopping and pushes the cart to get exercise."  (R. 17.)  Moreover, in reading the ALJ's opinion in full, it is clear that she carefully considered not only contrary *objective* medical evidence but *all* other medical evidence, including the opinions of Doctors Rosenfeld, Wolk, and Bonita.

---

medical evidence" because the ALJ also considered the "Plaintiff's inconsistent statements, doctors' observations of indicia of intentionally feigning symptoms, a conviction for writing bad checks, and initially lying during testimony regarding prior illegal drug use."); *Zulinski v. Astrue*, 538 F. Supp. 2d 740, 753 (D. Del. 2008) (finding that ALJ did not rely solely on lack of objective medical evidence because ALJ also considered "plaintiff's generally unpersuasive appearance and demeanor while testifying at the hearing" along with testimony that plaintiff no longer took pain medication as she once did) (internal quotation omitted*); Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) (same).

Accordingly, the Court finds that the ALJ did not violate 96-7p by considering only conflicting objective medical evidence.

Even had the ALJ fully credited Jones's testimony, however, substantial evidence in the record would still support her ultimate conclusion that Jones was not disabled.  In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ.  *See Burns*, 312 F.3d at 118.  Instead, the Court reviews the ALJ's findings to determine whether they were supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford*, 399 F.3d at 552.  Substantial evidence is not a particularly high burden.  It is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotations omitted).  When considering Jones's testimony in light of all the evidence in the record, *see supra*, at III.A, substantial evidence supports the ALJ's conclusion.

**V.**

Jones objects to the ALJ's Residual Functional Capacity ("RFC") assessment and the ALJ's hypothetical question posed to the vocational expert incorporating the RFC assessment. An ALJ must make this assessment before moving to steps four and five of the disability evaluation.  *See* 20 C.F.R. § 404.1520 (establishing the five step process in which to evaluate disability claims).  The RFC is "what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184 (July 2, 1996).  Jones claims that the RFC assessment lacked specificity "as to the frequency of the need to change position." (Pl.'s Obj. to R & R, at 8.)  In particular, Jones takes issue with the ALJ's finding that Jones "needs to be able to alternate standing and sitting at will."  (R. 16.)  Jones contends that this finding lacks specificity and,

because the RFC assessment lacked specificity, the hypothetical question posed to the vocational expert was flawed.  (*Id.*)

Jones argues the RFC was not specific enough because the ALJ did not state how often Jones should be allowed to adjust between sitting and standing.  Jones chiefly relies on Social Security Ruling 96-9p which provides that the RFC assessment "must be specific as to the frequency of the individual's need to alternate sitting and standing."  SSR 96-9p, 1996 WL 374185 (July 2, 1996).  Jones then asserts without citation that "chang[ing] position whenever desired . . . is obviously inconsistent with employment."  (*Id.* at 14.)  He continues, "[a]n individual who sits, then immediately stands, then immediately sits, and so on, cannot work." (Pl's Obj. to R & R, at 14; *see also* Pl.'s Reply Br., ECF No. 13, at 8 ("Simple common sense tells us that constant motion precludes competitive employment.").)  Since someone cannot constantly switch positions and work, Jones reasons, the ALJ must have assumed that the changes in position would not be so frequent as to preclude employment.  (*Id.*)  And because the ALJ made this underlying assumption without noting it in the RFC, it follows that the decision lacked specificity.  (*Id.*)

Jones's arguments are unconvincing.  The RFC was sufficiently specific when it included the requirement that Jones be able to sit and stand "at will."  While the Third Circuit has yet to address this issue, the Seventh Circuit has twice concluded as much in precedential opinions. *See Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008) (concluding that an RFC requiring the claimant to sit and stand "as needed during the day" was sufficiently specific; *see also Arnett v. Astrue*, 676 F.3d 586, 593–94 (7th Cir. 2012) (citing *Ketelboeter* and finding that the ALJ was not specific because the RFC did not allow the claimant the ability "to choose to sit or stand when she feels it is necessary.").  The Tenth Circuit in an unreported decision concluded

13

the same.  *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 792 (10th Cir. 2013) ("The option to sit or stand at will permits the claimant to control the frequency at which she alternates positions. *No greater specificity would be possible*."  (emphasis added)).  Additionally, district courts in this circuit agree.  *McGinnis v. Comm'r Soc. Security*, No. 12-1395, 2013 WL 6710344, at \*11 (W.D. Pa. Dec. 18, 2013) (citing *Ketelboeter* and concluding "an option to sit or stand at will" was sufficiently specific); *Jones v. Colvin*, No. 12-287E, 2014 WL 546695, at \*2 (W.D. Pa. Feb. 10, 2014) (concluding that an RFC finding that "Plaintiff be allowed to alternate between sitting and standing at will" did not require further specificity).

Some district courts in this circuit have reached a slightly different conclusion.  They assert that while it is unclear whether a requirement to sit or stand at will complies with SSR 96-9p, such error is usually harmless.  *See, Carden v. Colvin*, No. 14-3120, 2016 WL 233657, at \*5 (E.D. Pa. Jan. 20, 2016); *Keys v. Colvin*, No. 3:14-CV-191, 2015 WL 1275367, at \*11–12 (M.D. Pa. Mar. 19, 2015); *Barnhart v. Colvin*, No. 1:14-CV-00767, 2015 WL 778334, at \*10 (M.D. Pa. Feb. 24, 2015); *Cruz v. Astrue*, No. 09-0508, 2010 WL 3809829, at \*8–9 (E.D. Pa. Sept. 28, 2010); *see also Hodge v. Barnhart*, 76 F. App'x 797, 800 (9th Cir. 2003).

Here, the ALJ was sufficiently specific.  In the alternative, even if SSR 96-9p was violated, the error was harmless because the vocational expert testified that the available jobs included the ability to sit or stand at will with no restriction on choosing between the two.  (R. 69 (vocational expert concluding that "in my experience," these types of jobs "can . . . alternate sit and stand).)

Jones responds that such an "always-harmless rule is not reasonable."  (Objection, at 8.) Jones misunderstands the cases cited above.  Nowhere is an "always-harmless rule" adopted and the Court today does not adopt such a rule.  Instead, courts should review the RFC in context

with the vocational expert's testimony to determine if any perceived lack of specificity would have impacted the vocational expert's testimony. The Court perceives no such impact here, and accordingly finds in the alternative that such error was harmless.

Jones's challenge to the hypothetical question also fails. "A hypothetical question posed to a vocational expert 'must reflect *all* of a claimant's impairments.'" *Burns*, 312 F.3d at 123 (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Because the Court has concluded that the ALJ's RFC was sufficiently specific (or in the alternative, harmless), Jones's objection to the hypothetical question posed to the vocational expert must fail as well.

An appropriate order follows.

BY THE COURT:


**/s/ Gerald J. Pappert**
GERALD J. PAPPERT, J.

15